NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELICIA ANN EARLE, on behalf of herself and those similarly situated,<br><br>            Plaintiff,<br>   v.<br><br>BLST SALES, MARKETING & SERVICING, LLC; BB ALLIUM BORROWING TRUST; RESURGENT ACQUISITIONS LLC; LVNV FUNDING LLC; and JOHN DOES 1 to 10,<br><br>            Defendant. | Civil Action No.: 24-8983<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court are the motions of defendant BLST Sales, Marketing & Servicing LLC ("BLST") (ECF Nos. 6–7; *see also* ECF No. 7-1, "BLST Br."), and defendants Resurgent Acquisitions LLC and LVNV Funding LLC ("Resurgent" and "LVNV" and collectively with BLST, "Defendants") (ECF No. 16, "RL Br.") to compel arbitration of plaintiff Felicia Ann Earle's ("Plaintiff") Complaint (ECF No. 1, Ex. A, "Compl."). Plaintiff filed an opposition to both motions (ECF No. 22, "Opp. to BLST"; ECF No. 23, "Opp. to RL"), and Defendants replied (ECF No. 24 "RL Reply"; ECF No. 25 "BLST Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motions to compel arbitration are granted and the case is stayed pending arbitration.

**I.    BACKGROUND**

    **A.    The Credit Account Agreement**

In 2019, Plaintiff received a prescreened offer of credit by mail from WebBank, a Utah-chartered industrial bank, which offered the credit through a program called Fingerhut Advantage.

BLST Br. at 3. Plaintiff subsequently applied for this credit account over the phone. *Id*. Her application was approved, and she was issued a credit account. *Id.* at 4.

After opening her account, Plaintiff received a packet of materials that included the WebBank Fingerhut Advantage Credit Account Agreement. *Id*.; *see also* ECF No. 7-2, Ex. D ("Account Agreement"). The Account Agreement provided that it "covers your credit account . . . with WebBank . . . for purchases you make with Fingerhut." Account Agreement. It stated that "You and WebBank will be bound by this Agreement from the first time a transaction is posted to your Account." *Id*. Additionally, the Account Agreement included a Utah choice-of-law provision. *Id*.

The Account Agreement also contained an arbitration provision (the "Arbitration Agreement") which stated:

> Arbitration. Please review this provision carefully. It provides that any dispute may be resolved by binding arbitration. Arbitration replaces the right to go to court and the right to have a jury decide a dispute. Under this provision, your rights may be substantially limited in the event of a dispute. You may opt out of this Arbitration provision by following the instructions below.
>
> By accepting this Agreement, unless you opt out by following the instructions below, you agree that either you or we, at our sole discretion, can choose to have any dispute arising out of or relating to this Agreement or our relationship resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that dispute in court or to have a jury trial on that dispute. Pre-arbitration discovery will be permitted only as allowed by the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any dispute subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read the entire Arbitration provision carefully before accepting the terms of this Agreement.

Arbitration Agreement. The Arbitration Agreement defined the scope of its coverage and included a class action waiver:

> For purposes of this Arbitration provision, "dispute" shall be construed as broadly as possible, and shall include any claim, dispute or controversy (whether in

> contract, regulatory, tort or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to this Agreement, the credit offered or provided to you, or the goods or services you purchase; the actions of yourself, us, or third parties; or the validity of this Agreement or this Arbitration provision. It includes disputes brought as counterclaims, cross claims, or third party claims. A party that has brought a dispute in a court may elect to arbitrate any other dispute that may be raised in that litigation. Disputes brought as part of a class action or other representative basis are subject to arbitration on an individual (non-class, non-representative) basis. **IF YOU DO NOT OPT OUT, THEN YOU WILL HAVE WAIVED YOUR RIGHT TO INDICATE OR PARTICIPATE IN A CLASS ACTION RELATED TO THIS AGREEMENT**. In this Arbitration provision, the words "we," "us," and "our" shall include WebBank and any assignees of any of WebBank's rights, any merchant from which you purchased goods or services using your Account, as well as their respective affiliates, servicers, employees, agents, and further assigns.

*Id.* (emphasis in original). The Arbitration Agreement is governed by AAA rules:

> Any arbitration under this Arbitration provision shall be administered by the American Arbitration Association ("AAA") under the rules applicable to the resolution of consumer disputes in effect when the dispute is filed. The arbitrator shall have no authority to hear any disputes on a class action or representative basis. Neither you nor we may consolidate or join the disputes of other persons who may have similar disputes into a single arbitration, other than the disputes of or against joint account holders.

*Id.*

Plaintiff did not opt out of the Arbitration Agreement. BLST Br. at 7. She first used her account to make a purchase in March 2020 and continued to use the account after this date. *Id*. When making these purchases, Plaintiff had to check a box saying "I agree to the Term[s] and Conditions of my WebBank/Fingerhut Credit Account Agreement" before she could complete the purchase. *Id*. These terms included the same Arbitration Agreement as described above. *Id*.

### B. Assignment of the Debt

Plaintiff allegedly incurred unpaid debt in her account, Opp. to BLST at 3, which, along with debts in other customers' accounts, was subsequently sold and reassigned to each Defendant. ECF No. 16-2 ("Bills of Sale"). In 2022, WebBank sold Plaintiff's debt to BLST

3

and assigned it "all right, title and interest" in the account. *Id.* BLST then, for itself and as agent for BB Allium Borrowing Trust, sold the debt to Resurgent and assigned it all "rights, title and interest" in the account. *Id.* Resurgent, in turn, sold the debt to LVNV and assigned it "all right, title and interest" in the account. *Id.*

      **C.**    **LVNV's Collection Action and the Present Suit**

In June 2024, LVNV initiated a debt collection lawsuit against Plaintiff in New Jersey state court. Opp. to RL at 4. In response, Plaintiff initiated the instant action in New Jersey state court, seeking a declaration on behalf of a class of New Jersey consumers that the debts are void under New Jersey law because BLST and BB Allium did not have a license as a consumer lender or sales finance company. *See* Compl. ¶ 1. She also requests declaratory, injunctive, and monetary relief under the New Jersey Consumer Fraud Act ("NJCFA") and the Fair Debt Collection Practices Act ("FDCPA"). *Id.* ¶¶ 3–4.

Defendant BLST removed the case to this Court. ECF No. 1. Defendants now move to compel arbitration under the Account Agreement and to stay the case pending arbitration. ECF Nos. 6–7, 16.

**II.**    <u>**LEGAL STANDARD**</u>

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Under the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing FAA, 9 U.S.C. §§ 3, 4). Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181

4

F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted).

### III. DISCUSSION

#### A. Applicable Standard of Review

In determining whether a valid arbitration agreement exists, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted). Conversely, the Rule 56 standard will apply when "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate." *Id.* at 774. Where a complaint does not plead or attach the relevant terms of an arbitration provision, courts apply a summary judgment standard and should compel arbitration where there is no material issue of fact that "a valid agreement to arbitrate exists" and "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

Here, nothing on the face of the Complaint shows that Plaintiff's claims are subject to an enforceable arbitration clause. Although the Complaint references the existence of a credit account

contract, Compl. ¶ 3, it neither mentions an arbitration provision nor includes the contract as an exhibit. As the Court cannot resolve the arbitrability dispute without considering evidence outside of the pleadings, it will consider Defendant's motion to compel under the summary judgment standard. *See Ranginwala v. Citibank, N.A.*, No. 18-14896, 2020 WL 6817508, at *3 (D.N.J. Nov. 19, 2020).

### B. Analysis Under Rule 56

#### 1. There Is a Valid Agreement to Arbitrate

There is a valid agreement to arbitrate that is enforceable by the Defendants. Plaintiff's arguments to the contrary are either unpersuasive or reserved for a decision by the arbitrator.

##### i. Contract Formation

The Court applies state law principles of contract formation. *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019). The Account Agreement contains a Utah choice-of-law provision, and no party disputes that Utah law should apply. Under Utah law, contract formation requires offer, acceptance, and consideration. *See, e.g.*, *Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App. 2012). All three elements are met here. WebBank offered a contract to Plaintiff by mailing her the definite and unambiguous terms governing the credit account. *See Concur-Texas, LP v. Duradril, LLC*, No. 14-218, 2016 WL 2596028, at *4 (D. Utah May 5, 2016) (citation omitted). Plaintiff accepted those terms by using the credit services provided to her under that agreement and by reaffirming that she agreed to those terms when completing online purchases. *See Baker v. Comcast Corp.*, No. 19-652, 2020 WL 3895411, at *2–3 (D. Utah July 10, 2020); *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1190 (D. Utah 2024). Defendant provided valid consideration in the form of credit services in exchange for the promises in the Account

Agreement. *See Baker*, 2020 WL 3895411, at *3. Therefore, WebBank and Plaintiff formed a contract according to the terms in the Account Agreement.

*ii. Defendants Can Enforce the Contract*

The arbitration provision states that WebBank's "affiliates, servicers, employees, agents, and further assigns" may elect arbitration of "any claim, dispute or controversy . . . arising from or relating to this Agreement." Arbitration Agreement. The Account Agreement also states that WebBank "may sell, assign or transfer your Account or any portion thereof." Account Agreement. With their motion to compel, Resurgent and LVNV submitted the affidavit of a records custodian at Resurgent, which includes the Bills of Sale as an exhibit. *See* ECF No. 16-1, ("Pearce Aff."). These documents show that the title and interest in a series of accounts that originated with WebBank, including Plaintiff's, were assigned from WebBank to BLST, then from BLST to Resurgent, and finally from Resurgent to LVNV. *See* Pearce Aff. at ¶¶ 9–10; Bills of Sale. The language in each bill of sale provides that the transferor entity was assigning all of its right in the accounts sold. *See* Bills of Sale. The defendants were thus all "further assigns" of WebBank and can invoke the arbitration provision. *See Jeffreys v. Midland Credit Mgmt., Inc.*, No. 15-8470, 2016 WL 4443164, at *2 (D.N.J. Aug. 18, 2016) (permitting the assignee of a debt to enforce the arbitration provision in the relevant cardholder agreement); *Harris v. Midland Credit Mgmt., Inc.*, No. 15-4453, 2016 WL 475349, at *2 (D.N.J. Feb. 8, 2016) (same).

Accordingly, the Court finds that there is no factual dispute as to whether the defendants can enforce the credit agreement, and no further discovery is needed to resolve this motion. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319–20 (3d Cir. 2024) (stating that where there is no factual dispute, "there is nothing to discover and thus no need to delay a decision on the motion to compel").

### iii. The Arbitrator Must Decide Whether the Contract Is Void

Plaintiff argues that Defendants cannot enforce the Arbitration Agreement because the contract was void under New Jersey law. *See* Opp. to BLST at 13–15; Opp. to RL at 17–19. She contends that the court must resolve this issue before compelling arbitration, relying on *Coinbase, Inc. v. Suski*. 602 U.S. 143 (2024).

A party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not the contract as a whole. *Coinbase*, 602 U.S. at 150–151. Though "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Id.* at 151 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). Such a challenge, however, must attack the formation of the agreement. *See Young*, 119 F.4th at 321–322 (declining to consider Plaintiff's argument against a motion to compel where "there is no challenge to the agreement's formation"); *see also Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 250 n.13 (3d Cir. 2025) ("[Q]uestions regarding the formation of the arbitration agreement must be resolved in federal court." (citing *Young*, 119 F.4th at 321)). As Plaintiff argues that the entire contract is void and therefore unenforceable, rather than attacking its formation, the challenge is for the arbitrator to decide. *Button v. Dolgencorp, LLC*, No. 22-7028, 2025 WL 642687, at *6 (D.N.J. Feb. 27, 2025) (citing *Young*, 119 F.4th at 321).

### iv. The Class Action Waiver Is Not Unenforceable

Plaintiff next contends that the class action waiver in the arbitration provision is an unenforceable prospective waiver of statutory rights. *See* Opp. to BLST at 17–21; Opp. to RL at 21–24. Specifically, she argues that the waiver is unenforceable because it precludes her ability to bring FDCPA claims on a class basis. *See* Opp. to BLST at 17–21; Opp. to RL at 21–24. As

8

the class action waiver is nonseverable from the arbitration provision, Plaintiff claims that the entire provision is unenforceable. *See* Opp. to BLST at 20–21; Opp. to RL at 24.

The class action waiver is not an unenforceable prospective waiver of statutory rights. "[A]rbitration agreements that contain class action waivers are valid." *See Clemons v. Midland Credit Mgmt, Inc.*, No. 18-16883, 2019 WL 3336421, at *3 (D.N.J. July 25, 2019) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011)). Further, multiple courts within this district have upheld class waivers in arbitration clauses in putative FDCPA class actions. *See id.* (collecting cases). Enforcing these arbitration provisions merely changes the forum and prevents plaintiffs from pursuing class actions, but they do not eliminate their FDCPA claims entirely. *See id.* at *5 (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013)). Similarly, Plaintiff here is still able to pursue individual relief under the FDCPA and NJCFA. *See* 15 U.S.C. § 1692k; N.J. STAT. ANN. § 56:8-19.

Plaintiff's reliance on *Henry v. Wilmington Tr., NA*, 72 F.4th 499 (3d Cir. 2023) is unavailing. *See* Opp. to BLST at 17–21; Opp. to RL at 21–24. There, Plaintiff asserted breach of fiduciary duty claims under ERISA, which are "brought in a representative capacity on behalf of the plan as a whole." *Henry*, 72 F.4th at 506 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)). As the plaintiff could not seek individual relief, the court held that the class action waiver was a prohibited perspective waiver of statutory rights. *Id.* at 507. Because Plaintiff here can still pursue individual relief under the FDCPA and NJCFA, *Henry* is distinguishable. Accordingly, the class action waiver herein is not an unenforceable prospective waiver of statutory rights.

### v. *LVNV Has Not Waived its Right to Arbitrate*

Plaintiff also argues that LVNV waived its right to compel arbitration by filing a collection lawsuit in state court and by removing this case to federal court. Opp. to RL at 14–17. The test to determine whether a party has waived its contractual right to arbitrate a dispute is "identical to the inquiry for waiver of other contractual rights." *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2024 WL 3159316, at *3 (D.N.J. June 25, 2024) (quoting *White v. Samsung Electronics Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023)). A party commits waiver where it "has intentionally relinquished or abandoned a known right." *White*, 61 F.4th at 339 (cleaned up). Where the right concerns pursuing arbitration, the court focuses on the party who held the right and whether the party "acted inconsistently with an intent to assert its right to arbitrate." *Hejamadi*, 2024 WL 3159316, at *3 (quoting *White*, 61 F.4th at 339–40). The burden to establish waiver is on the party resisting arbitration. *Id.*

LVNV did not waive its right to arbitrate by filing the debt collection lawsuit. The purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (citation omitted). Here, the Arbitration Agreement provides that "[a] party that has brought a dispute in a court may elect to arbitrate any other dispute that may be raised in that litigation." Arbitration Agreement. This clause contemplates that a demand for arbitration on one claim could be made even after a lawsuit is filed on another claim. *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 957 (N.D. Ohio 2009) (finding that the act of filing a debt collection lawsuit was not necessarily inconsistent with reliance on a similar arbitration provision). LVNV's filing a debt collection suit and then moving to compel arbitration here is therefore consistent with the terms of the Arbitration Agreement. *See Garcia v. Weltman, Weinber & Reis Co. of Mich.*, No. 13-14362, 2014 WL

10

1746522, at *5 (E.D. Mich. Apr. 30, 2014) (noting that the arbitration agreement at issue permitted a party to file a debt collection suit without waiving arbitration on other claims). Additionally, many federal courts have rejected Plaintiff's waiver argument because prior debt collection cases involved claims distinct from those in the subsequent debt collection actions. *See, e.g.*, *id.* (recognizing that the claims in the state and FDCPA actions were "fundamentally different"); *Schwartz v. CACH, LLC*, No. 13-12644, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014) (noting that the arbitration agreement did "not require that the parties either litigate all claims or arbitrate all claims" and that the debt collection claims were "distinct" from the FDCPA claims). LVNV thus did not waive its contractual right to arbitrate the claims raised here by filing different claims in the debt collection action. *See Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008) (holding that filing a collection action was not inconsistent with intent to arbitrate an FDCPA dispute).

The cases cited by Plaintiff do not compel a different conclusion. First, in *Cain v. Midland Funding*, 156 A.3d 807 (Md. 2017) the Maryland Court of Appeals considered compelling arbitration under the Maryland Uniform Arbitration Act rather than the FAA. *See Collins v. Discover Fin. Servs.*, No. 17-3011, 2018 WL 2087392, at *3 (D. Md. May 4, 2018). Here, Defendants move to compel under the FAA, *see* RL Br. at 3–4, so *Cain* is of limited value. *See Glover v. Fein, Such, Kahn & Shepard, P.C.*, No. 23-22282, 2024 WL 3518120, at *5 (D.N.J. July 24, 2024). Second, the sole federal case Plaintiff cites—*Novic v. Midland Funding, LLC*, 271 F. Supp. 3d 778 (D. Md. 2017)—was vacated and remanded on appeal. *See Novic v. Credit One Bank*, 757 F. App'x 263 (4th Cir. 2019). Third, the decision in *Nelson v. Liberty Acquisitions Servicing LLC*, 374 P.3d 27 (Utah Ct. App. 2016) relied on the interpretation of "underlying litigation" under Utah state law, which is not relevant here. *Id.* at 31–32. Fourth, and finally,

11

*Principal Invs., Inc. v. Harrison*, 366 P.3d 688 (Nev. 2016) involved claims that were "integrally related to" the claims in the previous state court litigation. *Id.* at 697. Conversely, the claims asserted here are distinct from the claims asserted in the debt collection suit. *See Garcia*, 2014 WL 1746522, at *5.

LVNV also did not waive its right to arbitrate by removing the instant case to this Court or by any conduct after removal. Merely removing a lawsuit from state court to federal court does not waive a contractual right to arbitration. *Kelly v. Amazon.com, Inc.*, No. 22-821, 2022 WL 17584234, at *5 (M.D. Pa. Dec. 12, 2022) (collecting cases). Since removal, LVNV's conduct has been largely limited to filing its answer, attending a Rule 16 conference that resulted in an order allowing for initial disclosures, and submitting this motion. *See* ECF Nos. 5, 9–12, 14–16, 24. This conduct is not sufficient to establish waiver. *See Smith v. Experian Info. Sols.*, No. 22-6471, 2023 WL 6057377, at *5 (D.N.J. Sept. 14, 2023) (concluding that defendant had not waived arbitration where it filed an answer, attended court conferences, and engaged in early stages of pre-trial discovery); *Zenon v. Dover Downs, Inc.*, No. 21-1194, 2022 WL 2304118, at *2 (D. Del. June 27, 2022) (finding no waiver where defendant filed an answer, served initial disclosures, and did not engage in other motion practice).[1]

### 2. The Parties Delegated the Issue of Scope to the Arbitrator

The Supreme Court has instructed that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether . . . their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. The inclusion of AAA rules in the agreement constitutes "clear and

---

[1] The parties dispute whether the Arbitration Agreement prohibited Defendant from arbitrating its debt collection claim. *See* Opp. to RL at 16–17; RL Reply at 4. The Arbitration Agreement provides that "[w]e will not elect arbitration of any dispute that is filed as an individual matter by *you* in a small claims or similar court, so long as the dispute is pending on an individual basis." Arbitration Agreement (emphasis added). LVNV is the "we" and the Plaintiff is the "you." *Id.* This clause therefore has no application to a collection lawsuit brought by LVNV against Plaintiff.

unmistakable evidence that the parties agreed to delegate arbitrability." *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103–04 (3d Cir. 2020) (finding that scope is an issue of arbitrability for the arbitrator). Here, the arbitration provision provides that "[a]ny arbitration under this arbitration provision shall be administered by the American Arbitration Association ('AAA') under the rules applicable to the resolution of consumer disputes in effect when the dispute is filed." Arbitration Agreement. The AAA Consumer Rules state that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." AAA Consumer Arb. R. 7(a). Therefore, there is clear evidence that the parties intended the arbitrator to decide questions related to scope. *See Richardson*, 811 F. App'x at 103.

### IV. CONCLUSION

In sum, there is a valid arbitration agreement that is enforceable by Defendants. Whether the dispute falls within the scope of that agreement is a question for the arbitrator.

Accordingly, for the reasons stated above, **IT IS** on this 31st day of July, 2025;

**ORDERED** that Defendants' motions to compel arbitration (ECF Nos. 6–7 and 16) are **GRANTED**; and it is further

**ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY TERMINATED** pending the outcome of the arbitration proceedings; and it is further

**ORDERED** that the Clerk of the Court is directed to mark this case as **CLOSED**.

**SO ORDERED.**

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**